IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLEE A. NELSON, et al., <br><br>  Plaintiffs, <br><br> v. <br><br> RAYAH LEVY, et al., <br><br>  Defendants. | Case No. 16-cv-03797-MMC <br><br> **ORDER GRANTING DEFENDANT JESSICA JACOBSON'S MOTION TO DISMISS; AFFORDING PLAINTIFFS LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |

Before the Court is defendant Jessica Jacobson's ("Jacobson") motion, filed September 15, 2016, to dismiss plaintiffs' amended complaint ("AC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiffs Leslee A. Nelson, individually and in her capacity as trustee and trustor of the Leslee A. Nelson Revocable Trust ("Nelson"), and Nancy Barth ("Barth") have filed opposition, to which Jacobson has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[2]

## BACKGROUND[3]

Defendants Levy and Jacobson "co-founded ArtéQuesta in 2008 with a [stated] mission to help people make wise decisions for investing in art." (See AC ¶ 1.) Levy served as the "Chief Executive Officer" (see id. ¶¶ 10, 12) and Jacobson served as the

---

[1] On September 30, 2016, defendants Rayah Levy ("Levy"), and Rayah Rachel Levy International Inc., dba Artéquesta and Agents of Humanity in the Fine Arts, ("Levy International") each filed an answer to plaintiffs' amended complaint.

[2] By order filed October 13, 2016, the Court took the motion under submission.

[3] The following factual allegations are taken from the complaint.

"Chief Creative Officer . . . until at least the end of 2013" (see id. ¶ 13).

Plaintiff Barth met Levy in 2013. (See id. ¶ 55.) In August 2013, Levy "contacted Barth multiple times, through e-mail and telephone, during which she urged Barth to invest with the [d]efendants in art." (See id. ¶ 57.) Later that same month, Levy "met with Barth in . . . Jacobson's personal residence . . . , at which time . . . Barth viewed and purchased all of the art on display in the premises" (see id. ¶ 60) and, pursuant to Levy's instructions, wired $370,000 to a specified Wells Fargo bank account (see id. ¶ 62). On August 27, 2013, Levy sent Barth "bogus 'Certificates of Fine Art Evaluation' – created by [defendants] – that her investment . . . had tripled in value and was now, just one day later, worth $1,114,000 at 'current market value.'" (See id. ¶ 72.) "In the Fall of 2013, after [defendants] made additional solicitations for Barth to make further investments," Barth met with Levy "at Levy's personal residence . . . , at which time Barth purchased two additional art works . . . for a total of $50,000." (See id. ¶ 74). Barth "wired this money to the previously specified Wells Fargo Account" (see id. ¶ 131), bringing her total payment to $420,000 in exchange for art which "[d]efendants knew [was] worth no more than 10 percent of Barth's purchase price" (see id. ¶ 118).

Plaintiff Nelson "first met Levy in September 2014" (see id. ¶ 50) and, "over the course of many months, via e-mail and the telephone," Levy had "numerous conversations with Nelson" encouraging her to invest in art "through [defendants]" (see id. ¶ 67). On November 20, 2014, Nelson, pursuant to Levy's instructions, wired $300,000 "from the Leslee A. Nelson Revocable Trust" to a specified Wells Fargo bank account. (See id. ¶ 78). On November 30, 2014, the "[d]efendants (except Jacobson) presented Nelson with bogus 'Certificates of Fine Art Evaluation, which were created by [defendants]" and which "purported to 'confirm' . . . that Nelson's investment was worth $651,000." (See id. ¶ 82.) Thereafter, in March and August 2015 respectively, "Nelson commissioned two separate independent appraisals on the artwork acquired from the [d]efendants" (see id. ¶ 83); one appraiser valued the collection at "$17,000 *in toto*," and the other valued it at "no more than $30,000.00" (see id. ¶ 84).

2

Based thereon, plaintiffs assert seven Causes of Action, titled, respectively: "Conspiracy to violate RICO – § 1962 (c) & (d) (As to All Defendants)," "Fraud: Intentional Misrepresentation (By Barth as to All Defendants)," "Fraud: Intentional Misrepresentation (By Nelson as to All Defendants Except Defendant Jacobson)," "Conspiracy (By Barth as to All Defendants)," "Conspiracy (By Nelson et al. as to All Defendants Except Jacobson)," "Breach of Contract (By Barth as to all Defendants)," and "Breach of Contract (As to Nelson to All Defendants Except Jacobson)."

By the instant motion, Jacobson argues she is entitled to dismissal of each of the four causes of action asserted against her.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555.

Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

### A.   First Cause of Action: "Conspiracy to violate RICO – § 1962(c) & (d) (As to All Defendants)"

In the First Cause of Action, plaintiffs allege defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., through a "pattern of racketeering" from 2008 to present. (See AC ¶¶ 21, 98, 102.) In particular, plaintiffs allege defendants violated section 1962(c) and (d). (See id. ¶ 95.) In support thereof, plaintiffs allege that defendants structured an enterprise ("the Enterprise") that was designed to "fraudulently scheme money out of unsuspecting vulnerable victims" (see id. ¶36), and that plaintiffs were "induced" by "multiple . . . misrepresentations" to purchase artwork that "[d]efendants knew was worth no more than ten percent of . . . the purchase price paid to the [d]efendants" (see id. ¶¶ 117-18).

Section 1962(c) prohibits "any person employed by or associated with any enterprise" from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." See 18 U.S.C. § 1962(c). A "pattern of racketeering activity" "requires at least two acts of racketeering activity." See id. § 1961(5). Here, plaintiffs allege defendants have committed "mail and wire fraud" (see AC ¶ 102), both of which are listed among the acts that meet the definition of racketeering activity, see 18 U.S.C. § 1961(1)(B).

In pleading a civil RICO claim based on allegations of fraud, a plaintiff must comply with Rule 9(b) of the Federal Rules of Civil Procedure, by stating the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004) (internal quotation and citation omitted). Further, where "a fraud suit involve[s] multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." See Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir.

1    2007) (internal quotation, citation, and alteration omitted).

2    Jacobson contends the First Cause of Action as asserted against her should be
dismissed for failure to sufficiently plead her role in the alleged fraudulent scheme.  As
set forth below, the Court agrees.

First, to the extent said Cause of Action is brought on behalf of Nelson, plaintiffs, as Jacobson points out, have admitted they have not alleged sufficient facts to assert a claim.  In particular, plaintiffs allege "[t]he fraudulent sale of paintings involving Leslee Nelson took place in 2014 and the [p]laintiffs have no evidence at this time that suggests that Jacobson was involved with the Leslee Nelson transactions." (See Compl. ¶ 41 n.5.) Moreover, irrespective of the above-referenced concession, the Court notes that, to the extent the First Cause of Action is brought on behalf of Nelson, all of the acts on which said claim is based are alleged to have been committed by Levy.

Although plaintiffs oppose the instant motion to the extent the First Cause of Action is brought on behalf of Barth, arguing they have pleaded sufficient facts to show Jacobson "played an integral role in the fraudulent scheme" (see Pl.'s Opp. at 5:18), the Court is not persuaded.  Plaintiffs allege Jacobson "was the Chief Creative Officer and co-founder of Artéquesta" (see AC ¶ 31) and allowed Levy to "use . . . her home to showcase, promote and conduct sales of the art for Barth and other potential customers of the Enterprise" (see id. ¶ 61); plaintiffs do not allege, however, that Jacobson was present at the time any of the conversations or sales on which the claim is based occurred, nor do they allege any other facts sufficient to support an inference that Jacobson knew of or otherwise participated in Levy's allegedly fraudulent conduct.[4]

---

[4] Plaintiffs' reliance on their allegation that Jacobson made false statements in a 2011 advertisement for a company called "Musée Snowden," published in a city guide, and in a "sales pitch to new customers," included in a 2012 email to a former Artéquesta employee (see AC ¶¶ 33-34, Exs. B-C), is unavailing.  Plaintiffs fail to identify the assertedly false statements contained therein, let alone how plaintiffs were harmed thereby.  See Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (holding "[t]o comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged") (internal quotation and citation omitted).

1  Plaintiffs' conclusory allegation that Jacobson was an "active participant with the
2  Enterprise" (see AC ¶ 54) and similar conclusory allegations likewise are insufficient to
3  support their claim as asserted against Jacobson. See Swartz, 476 F.3d at 765 (rejecting
4  conclusory allegation that defendants "were active participants in the conspiracy").
5  Without the requisite supporting facts, plaintiffs' claim under section 1962(c) fails. See
6  Swartz, 476 F.3d at 765 (requiring plaintiff to "identify the role of each defendant in the
7  alleged fraudulent scheme"); see also Twombly, 550 U.S. at 555 (holding "[f]actual
8  allegations must be enough to raise a right to relief above the speculative level").[5]

9  As noted, plaintiffs also allege defendants violated section 1962(d). (See AC
10 ¶¶ 124-25.) Section 1962(d) prohibits any person from "conspir[ing] to violate any of the
11 provisions of subsection (a), (b), or (c) of [section 1962]." See 18 U.S.C. § 1962(d).
12 Here, plaintiffs base their claim under section 1962(d) on an alleged violation of section
13 1962(c). (See AC ¶ 125.) To be held liable under section 1962(d), "[a] defendant must
14 . . . have been aware of the essential nature and scope of the enterprise and intended to
15 participate in it." See Howard v. America Online Inc., 208 F.3d 741, 751 (9th Cir. 2000)
16 (internal quotation and citation omitted). Here, as set forth above, plaintiffs have failed to
17 adequately plead any facts to support Jacobson's participation in the alleged enterprise,
18 including whether she was aware of said enterprise or intended to participate therein.

19 Accordingly, to the extent the First Cause of Action is asserted against Jacobson,
20 it will be dismissed and plaintiffs will be afforded leave to amend. See Balistrieri, 901
21 F.2d at 701 (holding leave to amend "should be granted if it appears at all possible that
22 the plaintiff can correct the defect") (internal quotation and citation omitted).

**B.  Second Cause of Action: "Fraud: Intentional Misrepresentation (By Barth as to All Defendants)"**

In the Second Cause of Action, plaintiffs allege, on behalf of Barth, a state law

---

[5] Similarly, to the extent plaintiffs argue they have sufficiently pleaded facts to support alter ego as a theory of liability, the Court disagrees.

claim of intentional misrepresentation. The Second Cause of Action arises from the same set of facts as the RICO claim, namely that Barth "lost more than $400,000," which she "only invested . . . because she reasonably relied on the [d]efendants material and numerous false misrepresentations." (See AC ¶ 140.)

Jacobson argues the Second Cause of Action, as alleged against her, likewise is subject to dismissal because it has not been pleaded with sufficient particularity. In response, plaintiffs contend they have "established" that defendants "conspired together to commit . . . fraudulent acts" and consequently are "each jointly and severable liable for the damages that resulted from the conspiracy." (See Pl.'s Opp. at 11:11-14.) Again, the Court is not persuaded.

Under California law, a plaintiff may not allege conspiracy as a cause of action, but may rely upon it as "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-11 (1994). "A civil conspiracy must be activated by the commission of an actual tort," such as "common law fraud." See AREI II Cases, 216 Cal. App. 4th 1004, 1021 (2013) (internal quotation and citation omitted). "Mere association," however, "does not make a conspiracy"; rather, "[t]here must be evidence of some participation or interest in the commission of the offense." See Kidron v. Movie Acquisition Corp., 40 Cal. App. 4th 1571, 1582 (1995) (internal quotation and citation omitted).

For the reasons set forth above with respect to the First Cause of Action, plaintiffs have not alleged sufficient facts to support a reasonable inference that Jacobson conspired with Levy to defraud Barth.

Accordingly, the Second Cause of Action, as alleged against Jacobson, will be dismissed with leave to amend. See Balistrieri, 901 F.2d at 701.

**C.   Fourth Cause of Action: "Conspiracy (By Barth as to All Defendants)"**

In the Fourth Cause of Action, plaintiffs allege, on behalf of Barth, that defendants "conspire[d] to conduct and participate in [a] RICO enterprise" (see AC ¶ 161 (emphasis

omitted)) and "conspire[d] and collude[d] to deceive and defraud [p]laintiff Barth" (see id. ¶ 163). As Jacobson points out, however, there is no cause of action for civil conspiracy under California law. See Applied Equipment Corp., 7 Cal. 4th at 510 (holding "[c]onspiracy is not a cause of action").

Accordingly, the Fourth Cause of Action, as alleged against Jacobson, will be dismissed without leave to amend.

### D. Sixth Cause of Action: "Breach of Contract (By Barth as to All Defendants)"

In the Sixth Cause of Action, plaintiffs allege that "[d]efendants entered into a contract in fact with [p]laintiff Nancy Barth," whereby defendants "agreed, among other promises, to provide . . . Barth, for money, with authentic artwork investments worth at least the value of plaintiffs' purchase price" (see AC ¶ 177), and further agreed, "whether explicitly or impliedly, not to make false representations about either the authenticity of the artwork or the value of the artwork" (see id. ¶ 182). Plaintiffs allege "[t]he Enterprise materially breached their contracts with Nancy Barth by . . . selling inauthentic artwork . . . , making false representations . . . , and selling artwork to Barth that was worth but a mere fraction of the value of plaintiffs' purchase price." (See id. ¶ 183.)

Jacobson argues the Sixth Cause of Action is subject to dismissal as alleged against her because "California law provides that the terms of any contract must be recited verbatim or attached to the [c]omplaint," which plaintiffs have not done. (See Mot. at 16:10-11). The cases on which Jacobson relies, however, concern contracts in writing. See, e.g., Otworth v. Southern Pac. Transp. Co., 166 Cal. App. 3d 452, 459 (1985) ("If the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference."). Here, the subject contract is alleged to be "a contract in fact." (See AC ¶ 177.)

Nevertheless, the claim, as presently pleaded against Jacobson, fails. First, plaintiffs have not made clear whether, by alleging a "contract in fact," they intend to

allege an oral contract or an implied contract. Under California law, a contract is "either express or implied." See Cal. Civ. Code § 1619. The terms of an express contract "are stated in words," see id. § 1620, whereas the terms of an implied contract "are manifested by conduct," see id. § 1621. If plaintiffs seek to plead an oral contract, they must allege "such verbal agreement by setting forth the substance of its relative terms." See Gautier v. Gen. Tel. Co., 234 Cal. App. 2d 302, 305 (1965). Alternatively, if plaintiffs seek to plead an implied contract, they must allege sufficient facts, such as a "course of conduct," from which "the promise is implied." See Cal. Emergency Physicians Med. Grp. v. PacifiCare of Cal., 111 Cal. App. 4th 1127, 1134 (2003). Here, irrespective of whether plaintiffs' allegations suffice to set forth the substance of an oral contract, plaintiffs, as Jacobson points out, have failed to allege any facts to support their conclusory allegation that Jacobson was a party to any such oral agreement, nor have plaintiffs alleged any conduct on the part of Jacobson that would show she made an implied promise to Barth.[6]

Accordingly, the Sixth Cause of Action, as alleged against Jacobson, will be dismissed with leave to amend. See Balistrieri, 901 F.2d at 701.

**CONCLUSION**

For the reasons stated above, Jacobson's motion to dismiss is hereby GRANTED as follows:

1. To the extent Jacobson's motion seeks dismissal of the Fourth Cause of Action as alleged against Jacobson, said cause of action is DISMISSED without leave to amend.

2. To the extent Jacobson's motion seeks dismissal of the First, Second, and Sixth Causes of Action as alleged against Jacobson, said causes of action are DISMISSED with leave to amend. Should plaintiffs wish to file an amended complaint for

---

[6] Although such argument was raised by Jacobson for the first time in her reply, it is based upon the same arguments made in her motion and addressed by plaintiffs in response thereto.

9

purposes of curing the deficiencies identified herein, plaintiffs shall file, no later than December 9, 2016, a Second Amended Complaint. Plaintiffs may not, however, add any new causes of action or add any new defendant without first obtaining leave of court. See Fed. R. Civ. P. 15(a)(2). If plaintiffs do not file a Second Amended Complaint within the time provided, the instant action will proceed on the claims in the FAC against Levy and Levy International.

    3.    In light of the above, the Case Management Conference is continued from December 9, 2016, to February 17, 2017.

**IT IS SO ORDERED.**

Dated: November 23, 2016

MAXINE M. CHESNEY
United States District Judge